**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRYON ALFRED BENNETT, | |
| Plaintiff, | CIVIL ACTION NO. 09-5375 (MLC) |
| v. | **O P I N I O N** |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, a prisoner formerly confined at Somerset County Jail, brings this action in forma pauperis under 42 U.S.C. § 1983, alleging the violation of his right to adequate medical care under the Eighth and Fourteenth Amendments to the Constitution.[1] By Opinion and Order [14, 15] entered December 14, 2010, the Court screened the Complaint, dismissed certain claims, and permitted to proceed only the Eighth Amendment medical care claims asserted against Defendant Dr. Carleton Baler. See 28 U.S.C. § 1915(e)(2). Baler now moves for summary judgment in his favor.[2]

---

[1] To state a claim for relief under § 1983, a plaintiff must allege that a person acting under color of state law committed or caused a violation of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

[2] Baler is incorrectly named as "Dr. Baylor," and will be referred to by his correct name here.

Baler supports the Motion with a Statement of undisputed material facts, a Certification, and Plaintiff's prison medical records. Plaintiff, in his Opposition [41], does not provide a statement of undisputed material facts or any other affidavit or evidence supporting his claims or disputing Baler's showing.

## I. BACKGROUND

Plaintiff saw Baler on June 23, 2009, due to tooth pain from dental work, and did not report any abdominal pain. On the morning of June 29, 2009, a correctional officer reported that Plaintiff was complaining of stomach pain. Plaintiff walked to the medical department and was evaluated by the duty nurse at 7:12 a.m. The nurse determined that Plaintiff had tenderness in the upper left quadrant of his abdomen that may have been due to taking Motrin. As evaluated by the duty nurse, Plaintiff did not have rebound pain (pain when pressure is released from the abdomen), he was positive for bowel noises, his bowel movements were free of blood, he did not report diarrhea, and vital signs (heart rate, respiration, and blood pressure) were normal.[3] The nurse determined that Plaintiff was suffering from a gastrointestinal upset and provided Maalox. According to Plaintiff's medical records, the nurse also advised Plaintiff to contact the medical department if vomiting occurred, if there was blood in his stool, or if the pain worsened.

Baler also saw Plaintiff on the morning of June 29, 2009, for his report of abdominal pain. Baler performed an abdominal

---

Plaintiff does not dispute the facts surrounding his care on the two days in question, but argues that those facts demonstrate an Eighth Amendment violation.

[3] Baler attests that the absence of bowel sounds indicates peritonitis (an infection of the lining of the abdomen) or can be a nonspecific signal that something is wrong in the abdomen.

exam in which he palpitated the abdomen to identify objective symptoms of pain such as rigidity, tenderness, rebound pain, guarding and masses or swelling in certain organs.[4]  Plaintiff did not demonstrate any signs of tenderness, guarding, or rebound pain.  Plaintiff's vital signs again were within normal limits.  Plaintiff denied any vomiting or nausea, and he stated he was able to eat and drink.  Plaintiff was able to walk with a normal gait.  Accordingly, Baler determined that Plaintiff was not in significant pain and that Plaintiff's symptoms were consistent with gastrointestinal distress.[5]

At 2:15 p.m., a correctional officer sent Plaintiff back to the medical department because of continued pain in the upper central region of the abdomen.  Plaintiff had eaten and drank, had not vomited, and had two loose bowel movements.  Plaintiff reported that the pain remained the same as earlier in the day.

As a precaution, the nurse placed Plaintiff into medical observation so that he could be monitored for any changes in

---

[4] Baler attests that pain is a difficult symptom to assess, particularly in an inmate, as pain is highly subjective and a medical professional must be on guard for drug seeking behavior in the correctional setting.  Therefore, medical professionals look for objective evidence of pain during examinations.

[5] Baler attests that the most common cause of abdominal pain is gastrointestinal disturbance, or "functional GI symptoms," such as indigestion, acid reflux, constipation, diarrhea, and gas, which can cause significant pain, but are not dangerous, rarely require hospitalization, and only require time and palliative treatment to resolve.  Plaintiff provides no conflicting evidence as to the common causes of abdominal pain.

status.  At 7:50 p.m., Plaintiff reported that Maalox was not helping the pain.  Plaintiff had gas and a loose bowel movement, free of blood, after which he reported that his pain was relieved somewhat, but it then returned to a level of 7 out of 10.  The nurse provided Pepto-Bismol, kept Plaintiff in observation, and did not contact Baler.

At 10:00 p.m., Plaintiff again complained of abdominal pain and the nurse performed an abdominal exam.  Plaintiff's abdomen was tight, which is an objective symptom of pain.  Plaintiff was bloated and had some flatulence, but remained positive for bowel sounds.  Plaintiff stated that it hurt to lie down, but he was able to sleep in a sitting position.  While Plaintiff's symptoms had worsened, they remained consistent with gastrointestinal distress.  The nurse did not call Baler.

At 3:00 a.m. on June 30, 2009, Plaintiff complained of constipation and requested Maalox.  At 6:00 a.m., Plaintiff complained of pain and occasionally moaned.  Baler examined Plaintiff early in the morning at which time Plaintiff complained of constipation, but denied vomiting or diarrhea.  Baler performed another abdominal examination.  The bloating seen at 10:00 p.m. the night before was gone and Plaintiff's abdomen was flat. Plaintiff's vital signs remained stable and within normal limits. Baler determined that Plaintiff continued to suffer gastrointestinal distress that did not require hospitalization,

4

would resolve with time, and did not pose any threat to his health.  Baler allowed Plaintiff to return to general population.  Plaintiff walked to general population without difficulty.

At 2:00 p.m. on June 30, 2009, Plaintiff again returned to the medical department due to abdominal pain and constipation.  Plaintiff's blood pressure and temperature remained normal, but he had an elevated heart rate, an objective indicator of pain.  The nurse placed Plaintiff into observation again, provided him Milk of Magnesia for the constipation, and obtained a urine sample, which tested negative for a urinary tract infection.  At 2:25 p.m., Baler was notified of Plaintiff's condition.  Baler directed that Plaintiff be closely monitored for any change in vital signs or status.  Baler arranged to see Plaintiff at sick call the next morning.

By 4:45 p.m. on June 30, 2009, Plaintiff exhibited a change in status and symptoms.  Plaintiff was screaming with pain.  His pulse and respiration were both elevated.  For the first time, Plaintiff's abdomen had become hypoactive, that is, a reduction in sound and movement.  Plaintiff's abdomen was distended.  The nurse contacted Baler and he immediately ordered that Plaintiff be sent to a hospital emergency room for evaluation.

At the hospital, a CAT scan revealed that Plaintiff had suffered a subcapsular splenic hematoma - a ruptured spleen.  Plaintiff's blood work revealed that he was significantly anemic and had a very high white blood cell count, mainly comprised of

the myeloid series of white blood cells.  A surgeon performed a splenectomy and by the next day Plaintiff was recovering well.

On July 1, 2009, Dr. Steven Young, an oncologist, determined that Plaintiff likely had chronic myelocytic leukemia ("CML"), and he performed a bone marrow aspiration biopsy with cytogenetics to confirm the diagnosis.  The Somerset County Jail staff remained in contact with the hospital staff regarding Plaintiff's surgical recovery and diagnosis.  On July 9, 2009, Plaintiff was returned to Somerset County Jail.  There were no further medical complications before Plaintiff was transferred to the state prison system on July 10, 2009.

Baler now moves for summary judgment, asserting that the medical records reflect that he timely and appropriately treated Plaintiff, and thus that there is no evidence of "deliberate indifference" in violation of the Eighth Amendment.

## II.   SUMMARY JUDGMENT

**A.   Federal Rule of Civil Procedure 56**

A district court shall grant summary judgment, as to any claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A party asserting that a fact cannot be, or is genuinely disputed, must support the assertion by citing to particular parts of materials in the record, or by showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).  Nevertheless, the court may consider other materials in the record.  Fed.R.Civ.P. 56(c)(3).

>Federal Rule of Civil Procedure 56(e) further provides that:
>
>If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>(1) give an opportunity to properly support or address the fact;
>(2) consider the fact undisputed for purposes of the motion;
>(3) grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it; or
>(4) issue any other appropriate order.

Fed.R.Civ.P. 56(e).

No genuinely triable issue of material fact exists when the movant shows – based on the submitted evidence, and viewing the facts in the light most favorable to the non-movant – that no rational jury could find in the non-movant's favor.  <u>Ambruster v. Unisys Corp.</u>, 32 F.3d 768, 777 (3d Cir. 1994).  Thus, the threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  In deciding whether triable issues of material fact exist, a court must view the underlying facts and draw all

reasonable inferences in favor of the non-movant.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant has properly supported a showing of no triable issue of fact and an entitlement to judgment as a matter of law, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; see Anderson, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.").

What the non-movant must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); see Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) ("object of [former Rule 56(e), now Rule 56(c)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit"); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact, ... the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the ' mere scintilla' threshold and ... offer[] a genuine issue of material fact.").

A movant need not affirmatively disprove the non-movant's case, but may move on the ground that the non-movant lacks evidence "sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 322-23.

**B.   Local Civil Rule 56.1**

Local Civil Rule 56.1(a) requires that, on summary judgment motions, both the movant and non-movant furnish a statement identifying what each deems to be the material facts, so that the Court can determine if a genuine dispute exists.  The Rule commentary notes that "the requirement of a separate document represents a change from the practice under the former version of the rule," and "[t]he Rule 56.1 statement is viewed by the Court as a vital procedural step, since it constitutes and is relied upon as a critical admission of the parties."  The commentary specifies the content and format of the statement: e.g., assertions must be set out in separately numbered paragraphs; each fact must be supported by a citation to an affidavit.

### III.  DISCUSSION

Plaintiff seeks to proceed against Baler as to his care at Somerset County Jail on June 29 and 30, 2009.  Plaintiff does not state whether he was a pre-trial detainee, a convicted but unsentenced prisoner, or a sentenced prisoner at the time.  Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests grounded in the Due Process Clause of the

Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000). Convicted and sentenced prisoners are protected by the Eighth Amendment proscriptions against cruel and unusual punishment.[6]

---

[6] Analysis of whether a pre-trial detainee or unsentenced prisoner has been deprived of liberty without due process, in violation of the Due Process Clause of the Fourteenth Amendment, is governed by Bell v. Wolfish, 441 U.S. 520 (1979):

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Id. at 535-39 (citations omitted). However, the government has

Baler has moved on Eighth Amendment grounds. The New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on May 29, 2009, and his transfer to state correctional authorities on July 10, 2009, would seem to confirm that Plaintiff was a sentenced offender, protected by the Eighth Amendment, on the dates at issue. Also, Plaintiff's medical records for June 30, 2009, state that he is a state sentenced prisoner. In the absence of any contrary information from Plaintiff, the Court will proceed on that basis.[7]

The Eighth Amendment to the Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes, following entry of judgment. Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). To set forth a cognizable claim for

---

legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. But retribution and deterrence are not legitimate nonpunitive governmental objectives. Id. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

[7] In any event, the Court holds that the result would be the same under a Fourteenth Amendment analysis applicable to pre-trial detainees or convicted but unsentenced offenders.

a violation of the right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106.

To satisfy the first part of the Estelle inquiry, the inmate must demonstrate that the medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for medical attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second part of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to a serious medical need. "Deliberate indifference" is more than malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements

over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

   "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Lanzaro, 834 F.2d at 346 (citations omitted).  "Short of absolute denial, 'if necessary medical

13

treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted).  "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

Plaintiff does not dispute the facts regarding the medical examinations and observations at Somerset County Jail on June 29 and 30, 2009.  However, Plaintiff's characterization of the events is that Baler "did ignore" Plaintiff's discomfort; he further argues that Baler is liable for "negligence, wrongful acts, malpractice or deliberate indifference." (Pl.'s Submission, Docket Entry No. 41, ¶¶ 6.C., 8.)  The Court disagrees.

As Baler attests, undisputed by Plaintiff, the most common cause of a ruptured spleen is physical trauma.  Plaintiff reported none.  A ruptured spleen also is extraordinarily painful.  Had Plaintiff suffered a ruptured spleen on June 29, 2009, he most likely would have demonstrated objective symptoms of extreme pain, such as rebound pain in his abdomen, a distended abdomen, elevated vital signs, and altered and restricted gait; Plaintiff did not demonstrate these significant objective symptoms of extreme pain on June 29, 2009.  When Plaintiff did exhibit these symptoms on June 30, 2009, Baler immediately had him transferred to an emergency room for evaluation and treatment.

As Baler also attests, undisputed by Plaintiff, CML typically presents, initially, with nonspecific symptoms such as tiredness and weight loss, so it is usually detected first through routine blood panels.  Plaintiff did not present these generalized symptoms.  As the disease progresses, it can cause enlargement of the spleen.  Here, however, the first indication that Plaintiff suffered from CML was the rupture of his spleen.  Plaintiff's extreme pain and associated objective symptoms, including the significant change in his vital signs, on the afternoon of June 30, 2009, were the first indication that Plaintiff was suffering something more severe than ordinary gastrointestinal distress.

The undisputed facts regarding observations and treatment of Plaintiff at Somerset County Jail on June 29 and 30, 2009, belie any suggestion of deliberate indifference.  Baler and the other staff involved in Plaintiff's care, during a period of about 36 hours, examined him several times, admitted him twice for observation, and treated him for his various gastrointestinal symptoms, including both diarrhea and constipation.  As soon as Plaintiff presented objective symptoms of severe pain and some abdominal disorder other than gastrointestinal distress, Baler immediately transferred him to an emergency room for evaluation and treatment.  The objective symptoms, even viewed retrospectively, do not suggest that Plaintiff had suffered a ruptured spleen on June 29, 2009, or that Baler should have

15

suspected, at that time, either a ruptured spleen or a diagnosis of CML.  To the contrary, as soon as the objective symptoms indicated a condition more serious than ordinary gastrointestinal upset, Baler and the other treating staff at Somerset County Jail acted expeditiously to move Plaintiff to a facility able to diagnose and treat his illness.  There is, quite simply, no evidence of deliberate indifference to Plaintiff's illness or need for treatment.[8]

### IV.  CONCLUSION

The Motion for summary judgment will be granted.  The Court will issue an appropriate order and judgment.[9]

                                                                            s/ Mary L. Cooper  
                                                        **MARY L. COOPER**  
                                                     United States District Judge

Dated:   March 16, 2012

---

[8] Similarly, there is no evidence that would support a finding of unconstitutional "punishment" in violation of the Due Process Clause of the Fourteenth Amendment.

[9] Plaintiff named fictitious John Doe nurses and doctors at Somerset County Jail.  Plaintiff has not identified or served these fictitious defendants.  The Court will dismiss the claims against them pursuant to Federal Rule of Civil Procedure 4(m).